# EXHIBIT 1

FILED
17 FEB 09 AM 11:49

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 17-2-03264-6 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| STAN SCHIFF, M.D., Ph.D., <br><br> Plaintiff, <br> vs. <br><br> LIBERTY MUTUAL FIRE INSURANCE CO. and LIBERTY MUTUAL INSURANCE COMPANY, foreign insurance companies. <br><br> Defendants. | Cause No.: <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Dr. Stan Schiff, MD, Ph.D., ("Dr. Schiff" or "Plaintiff") alleges the following Complaint against Defendants Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company, (collectively "LM" ) for a Declaration that LM's practice of relying solely and exclusively on a computer software program to automatically reduce reasonable Washington health care providers' bills submitted on Personal Injury Protection ("PIP") claims to the 80th percentile of charges in the FAIR Health RV Benchmark database (the "FH database") violates the PIP statute, WAC § 284-30-330 and is an unfair practice that violates the Washington Consumer Protection Act, ("CPA") RCW 19.86 *et seq.* LM refers to this type of reduction in its Explanation of Review ("EOR") form as a "usual and customary amount for geographical area" or "Explanation Code 99" reduction (a "code 99 reduction"). Plaintiff also seeks a Declaration that LM's practice is a deceptive practice that violates the CPA. Plaintiff further alleges:

COMPLAINT - 1

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

## I.   PARTIES

1.1   Plaintiff, Dr. Stan Schiff, is a board certified neurologist, a diplomat of the American Board of Neurology and American Board of Electrodiagnostic Medicine. Dr. Schiff has a Ph.D. in Neuroscience, as well as his M.D. He practices in Shoreline, King County, Washington.

1.2   Dr. Schiff provided care and treatment to one or more patients who had PIP coverage under an automobile insurance policy issued by LM at his offices in Shoreline.

1.3   Dr. Schiff was *not* and is *not* a member of the class certified in *Lebanon Chiropractic Clinic, P.C. v. Liberty Mutual Ins. Co. et al,* Illinois Cir. Ct., St. Clair County, Case no. 14-L-521.

1.4   Defendants Liberty Mutual Fire Insurance Company and Liberty Mutual Insurance Company (collectively "LM") are foreign insurance companies that have done business in Washington and in King County from at least February 9, 2013 to the date of this Complaint. Over this period, each company has sold automobile insurance policies with PIP coverage.

1.5   At all times material to Plaintiff's claim, the Washington PIP statute, RCW 48.22 *et seq.* required insurers to pay "**all reasonable** and necessary medical expenses" arising from a covered accident submitted on a covered PIP claim. Emphasis added.

1.6   At all times material to Plaintiff's claim, the Washington Administrative Code has required that insurers adopt reasonable procedures for investigating insurance claims, that insurers reasonably investigate a PIP claim before refusing to pay the claim in full and that insurers accurately and fully describe all facts pertinent to its decision to deny payment of a PIP claim.

## II.   FACTS

2.1   From February 9, 2013 to the date of this Complaint, Dr. Schiff has provided medical services for patients with PIP coverage under a LM automobile policy.

2.2   Prior to examining, testing and/or treating LM patients, the patient signs an agreement under which the patient assigns to Dr. Schiff the patient's rights to be paid for all

COMPLAINT - 2

reasonable and necessary expenses incurred from Dr. Schiff's medical services from any applicable insurance including the patient's PIP insurance policy with LM.

2.3     From February 9, 2013 to the date of this Complaint, LM's policy and practice was to request that insureds have their health care providers bill LM directly for medical expenses covered by the PIP insurance policy. It was LM's policy and practice to accept the provider's bill as a PIP claim for payment of all reasonable and necessary medical expenses arising from a covered accident and to pay the provider directly once coverage had been determined.

2.4     Consistent with these policies and practices, Dr. Schiff billed LM directly for services provided LM patients.

2.5     LM accepted Dr. Schiff's bills as a PIP claim for payment of all reasonable and necessary expenses arising from a covered accident once coverage was determined.

2.6     On October 24 and 26, 2016 Dr. Schiff examined, performed tests on and/or treated a patient with PIP coverage under an LM insurance policy. Dr. Schiff's services for the patient are described in the Explanation of Review ("EOR") contained in **Exhibit A**.

2.7     On or about November 1, 2016, Dr. Schiff billed LM directly for his services.

2.8     In addition to other services, Dr. Schiff billed LM $675 for a CPT 95816 procedure as described in the EOR contained in **Exhibit A.**

2.9     Dr. Schiff's bill was inputted into LM's computer system by LM or a third-party vendor.

2.10    From at least February 9, 2013 to the date of this Complaint, LM's computer system has been loaded with a software program supplied by Mitchell International. The program is referred to as "Smart Choice" or "Decision Point."

2.11    The Mitchell software program is licensed to LM for use in adjusting PIP insurance claims as well as other purposes.

2.12    From at least February 9, 2013 to the date of this Complaint, the Mitchell software program contained the FAIR Health RV Benchmark Database (the "FH database").

COMPLAINT - 3

2.13 From at least February 9, 2013 to the date of this Complaint, Mitchell licensed the FH database from FAIR Health, Inc. under a licensing agreement.

2.14 From February 9, 2013 to the date of this Complaint, LM's practice was to use a computer to automatically reduce any billed amount for any CPT procedure submitted by any provider on a Washington PIP claim that exceeded the amount which LM believed represented the 80th percentile of charges in the FH database for the same procedure from the provider's three-digit "geo-zip" area down to that amount.

2.15 The "geo-zip" area used by the computer was an area that included all cities and unincorporated areas with zip codes beginning with the same first three numbers as the billing provider's zip code.

2.16 LM's computer then created an electronic Explanation of Review ("EOR") form for LM's adjuster assigned to the PIP claim.

2.17 The computer put the FH 80th percentile amount in the EOR's "Review Allow" column.

2.18 The computer put the FH 80th percentile amount in the EOR's "CURR Paid" column.

2.19 The computer put a "99" in the EOR's "EXPL Code" column.

2.20 The computer put "99 other" in the EOR's "Explanation Code Descriptions" section.

2.21 The computer put the words "Payment based on the usual and customary amount for geographical area" in the EOR's "Notes" section.

2.22 LM's adjuster then pushed a button or clicked on a button to pay the FH 80th percentile amount.

2.23 Before doing so, the adjuster did not investigate in any manner whether the full amount billed was reasonable. The adjuster did not assess, analyze or review the reasonableness of the amount charged by the provider.

COMPLAINT - 4

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2.24 No other LM employee or representative investigated in any manner whether the full amount billed was reasonable. No other LM employee or representative assessed, analyzed or reviewed the reasonableness of the amount charged by the provider.

2.25 Before paying the provider the 80th percentile amount instead of the full amount billed, the adjuster did not know how the computer had set the "Review Allow" amount and the reduced amount paid to the provider.

2.26 The adjuster did not compare the amount billed by the provider with amounts charged for the same CPT procedure by similar providers in in the same city or in the area that had the same five-digit zip code as the billing provider.

2.27 The adjuster did know what charges and which providers the computer used in arriving at the 80th percentile amount.

2.28 The adjuster did not determine whether there were any charges in the FH database used by the computer for the same CPT procedure from providers in the same city or in the area that had the same five-digit zip code as the billing provider.

2.29 No other LM employee or representative determined whether there were any charges in the FH database used by the computer for the same CPT procedure from providers in the same city or in the area that had the same five-digit zip code as the billing provider.

2.30 The adjuster assigned to the PIP claim relied solely and exclusively on the computer's determination of the 80th percentile of the FH RV Benchmark Database in paying the provider the reduced amount set out in the "Review Allow" column of the EOR.

2.31 LM's practices described in paragraphs 2.09 to 2.30 were applied to the bills submitted by Washington health care providers on PIP claims from at least February 9, 2013 to the date of this Complaint.

2.32 LM's practices described in paragraphs 2.09 to 2.30 were applied to Dr. Schiff's bills submitted from at least February 9, 2013 to the date of this Complaint.and to the bill Dr. Schiff submitted on or about November 1, 2016.

COMPLAINT - 5

2.33  Dr. Schiff's zip code shown on LM's EOR for his office in Shoreline is 98133. *See,* **Exhibit A**. LM's computer used the "981 geo-zip" area to reduce Dr. Schiff's bill to the 80th percentile of the FH RV Benchmark Database.

2.34  The "981 geo-zip" area includes not only Shoreline, but Burien, White Center, Sea-Tac, Des Moines, West Seattle and Bainbridge Island, Washington. Each city has zip codes that begin with 981.

2.35  Prior to June 1, 2011, Mitchell licensed the Ingenix RV Database from the Ingenix Corporation and licensed to LM a software program that contained the Ingenix RV Database.

2.36  Prior to June 1, 2011, LM's practice was to use a computer to automatically reduce any billed amount for any CPT procedure submitted by any provider on a Washington PIP claim to an amount which LM believed represented the 80th percentile of charges in the Ingenix RV database for the same procedure from the provider's three-digit "geo-zip" area.

2.37  Mitchell licensed the Ingenix RV Database from the Ingenix Corporation and licensed to LM a software program that contained the Ingenix RV Database

2.38  The Ingenix RV Database had similar data collection, "geo-zip" and "relative value" methodologies as the FH database.

2.39  The Ingenix RV Database used the same 981 geo-zip area as the FH RV Benchmark Database.

2.40  The Ingenix RV Database used the same 8 geo-zip areas for the State of Washington as the FH RV Benchmark Database

2.41  LM's practices using the Ingenix RV database prior to June 1, 2011 were identical in all material respects to LM's practices using the FH RV database from February 9, 2013 to present as described in paragraphs 2.019 to 2.30 above.

2.42  The Ingenix and FH databases are identical in all respects material to LM's practice of relying solely and exclusively on the 80th percentile of an RV database to automatically

COMPLAINT - 6

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

reduce bills submitted by any provider for any CPT procedure that exceeds the 80th percentile amount down to that amount.

2.43  The Ingenix licensing agreement with Mitchell International under which LM used the Ingenix database prior to June 1, 2011 stated in words or substance that the Ingenix database could not be used to set or determine "usual, customary and reasonable charges" either "actual or derived." The licensing agreement stated in words or substance that the licensee or user of the Ingenix database could not represent its use of the database in any way that was inconsistent with the statement that the database could not be used to determine "usual, customary and reasonable charges" either "actual or derived."

2.44  Mitchell told LM in words or substance that using the Ingenix database did not set or determine usual, customary and reasonable charges" either "actual or derived."

2.45  The FH licensing agreement with Mitchell during the period from February 9, 2013 to present stated in words or substance that the FH database could not be used to set or determine "customary and reasonable charges" either "stated or implied." The licensing agreement stated in words or substance that the licensee or user of the FH database could not represent its use of the database in any way that was inconsistent with the statement that the database could not be used to set or determine "customary and reasonable charges" either "stated or implied."

2.46  Mitchell told LM in words or substance that using the FH database did not set or determine "customary and reasonable charges" either "stated or implied."

2.47  LM understood that the disclaimers and limitations on the use of the Ingenix and FH databases set out in the licensing agreements were substantively the same.

2.48  The 80th percentile of the Ingenix RV database when used by LM did not represent an amount that 80% of providers in the "geo-zip" area charged for the same CPT procedure.

2.49  The 80th percentile could represent an amount that only 10% or 20% of providers in the geo-zip area charged.

COMPLAINT - 7

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2.50    When LM used the 80th percentile of the Ingenix RV database it was not possible to get a margin of error on how far away the 80th percentile amount was from what a majority or over 50% of providers in the area charged for the same CPT procedure.

2.51    When LM used the 80th percentile of the Ingenix RV database it was not possible to set or determine a usual, customary or reasonable fee, either actual or derived, for any CPT procedure for any provider in any Washington "geo-zip" area.

2.52    It was not possible to set or determine a usual, customary or reasonable fee, either actual or derived, for any CPT procedure for any provider in any Washington city.

2.53    It was not possible to set or determine a usual, customary or reasonable fee, either actual or derived, for any CPT procedure for any similar providers with similar years of practice, or similar credentials or similar specialization or expertise.

2.54    When LM used the 80th percentile of the Ingenix RV database to make code 99 reductions to bills submitted by Washington providers, including Dr. Schiff, LM did so as a "sham" procedure to evade its duties under the PIP statute to pay "*all reasonable*" medical expense bills submitted on a PIP claim.

2.55    When LM used the 80th percentile of the Ingenix RV database to make code 99 reductions to bills submitted by Washington providers, including Dr. Schiff, LM did so as a "sham" procedure to evade its duties under WAC 284-30-330, including its duty to conduct a reasonable investigation of a provider's bill before refusing to pay it in full.

2.56    The 80th percentile of the FH RV database when used by LM did not represent an amount that 80% of providers in the "geo-zip" area charged for the same CPT procedure.

2.57    The 80th percentile could represent an amount that only 10% or 20% of providers in the geo-zip area charged.

2.58    When LM used the 80th percentile of the FH RV database it was not possible to get a margin of error on how far away the 80th percentile amount was from what a majority or over 50% of providers in the area charged for the same CPT procedure.

COMPLAINT - 8

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2.59   When LM used the 80th percentile of the Ingenix RV database it was not possible to set or determine a usual, customary or reasonable fee, either stated or implied, for any CPT procedure for any provider in any Washington "geo-zip" area.

2.60   It was not possible to set or determine a usual, customary or reasonable fee, either stated or implied, for any CPT procedure for any provider in any Washington city.

2.61   It was not possible to set or determine a usual, customary or reasonable fee, either stated or implied, for any CPT procedure for any similar providers with similar years of practice, or similar credentials or similar specialization or expertise.

2.62   When LM used the 80th percentile of the FH RV database to make code 99 reductions to bills submitted by Washington providers, including Dr. Schiff, LM did so as a "sham" procedure to evade its duties under the PIP statute to pay "*all reasonable*" medical expense bills submitted on a PIP claim.

2.63   When LM used the 80th percentile of the FH RV database to make code 99 reductions to bills submitted by Washington providers, including Dr. Schiff, LM did so as a "sham" procedure to evade its duties under WAC 284-30-330, including its duty to conduct a reasonable investigation of a provider's bill before refusing to pay it in full.

2.64   The 80th percentile of the Ingenix RV database when used by LM did not provide any information on what providers in the same city or same area with the same five digit zip code charged for the same CPT procedure.

2.65   The 80th percentile of the Ingenix RV database when used by LM may not have included any charges at all from the billing provider's city or five digit zip code area for the same procedure.  It may not have included any statistically meaningful number of charges from the billing provider's city or five digit zip code area for the same procedure.

2.66   Before LM adjusters reduced Washington provider bills, including Dr. Schiff's bills, using the 80th percentile of the Ingenix RV database to make code 99 reductions, neither LM nor its adjuster determined that there was in fact a statistically meaningful number of charges from

COMPLAINT - 9

the billing provider's city or five digit zip code area for the same procedure included in the 80th percentile of charges used.

2.67   The 80th percentile of the FH RV database when used by LM did not provide any information on what providers in the same city or same area with the same five digit zip code charged for the same CPT procedure.

2.68   The 80th percentile of the FH RV database when used by LM may not have included any charges at all from the billing provider's city or five digit zip code area for the same procedure.  It may not have included any statistically meaningful number of charges from the billing provider's city or five digit zip code area for the same procedure.

2.69   Before LM adjusters reduced Washington provider bills, including Dr. Schiff's bills, using the 80th percentile of the FH RV database to make code 99 reductions, neither LM nor its adjuster determined that there was in fact a statistically meaningful number of charges from the billing provider's city or five digit zip code area for the same procedure included in the 80th percentile of charges used.

2.70   The 80th percentile of the Ingenix RV database when used by LM did not provide any information on what similar providers with similar years of experience, credentials, background, training , skill, quality of service, reputation  or overhead costs charged for the same CPT procedure.

2.71   The 80th percentile of the FH RV database when used by LM did not provide any information on what similar providers with similar years of experience, credentials, background, skill, quality of service, reputation  or overhead costs charged for the same CPT procedure.

2.72   In August 2012, a King County jury of 12 reached a unanimous verdict in a case against the Progressive insurance companies that do business in Washington that Progressive's practice of relying solely and exclusively on a computer to reduce provider bills submitted on PIP claims that exceeded the 90th percentile of the Ingenix database to that amount was an unfair practice that violated the Washington Consumer Protection Act and caused injury to the

COMPLAINT - 10

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

provider's business. *See, Kerbs v. Progressive Max Ins. Co.,* King Co. Sup. Ct. no. 10-2-30608-1 SEA (the "*Progressive* case"). Following the jury's verdict, the presiding judge entered an order that the certified class of Washington providers whose bills were reduced by Progressive had established at trial a prima facie damages claim based on Progressive's practice.

2.73   LM used the same Ingenix RV database as Progressive used to make 90th percentile reductions to Washington provider bills.

2.74   Progressive's practice was identical in all material respects to LM's practice using the Ingenix database as described above in paragraphs 2.09 to 2.70.

2.75   LM mutual used the same FH RV database as Progressive used to make 90th percentile reductions to Washington provider bills.

2.76   Progressive's practice was identical in all material respects to LM's practice using the FH RV database as described above in paragraphs 2.09 to 2.71.

2.77   On November 18, 2016, LM reduced Dr. Schiff's $675 bill for CPT procedure 95816 provided to the LM patient on October 24, 2016 to $571.73 and sent Dr. Schiff a check that included the reduced payment of $571.73. The reduction was identified on the EOR sent to Dr. Schiff by LM as "99 Explanation Code."

2.78   The code 99 reduction was based solely and exclusively on LM's computer automatically reducing the $675 billed by Dr. Schiff down to the FH RV database 80th percentile amount and no other factor.

2.79   In making the reduction, LM followed the practices described in paragraphs 2.09 to 2.71 above.

2.80   The LM adjuster assigned to the PIP claim did not assess, evaluate or investigate in any manner the reasonableness of Dr. Schiff's $675 bill for the 95816 procedure before LM sent Dr. Schiff the reduced amount of $571.75.

2.81   The LM adjuster did not know how the computer set the amount of $571.75.

COMPLAINT - 11

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2.82 The LM adjuster did not know what providers were used in setting the amount of $675 bill.

2.83 The LM adjuster did not know what charges were used in setting the amount of $675 bill.

2.84 When Dr. Schiff's bill was reduced to $571.75 the full amount Dr. Schiff billed of $675 was a reasonable amount for Dr. Schiff to bill for a 95816 procedure.

2.85 The full amount billed of $675 was reasonable based on Dr. Schiff's over 25 years of experience, his superior credentials as a Board Certified Neurologist with a Ph.D., his superior training and background, skill, quality of service, reputation and overhead costs.

2.86 The full amount billed of $675 was reasonable because it was Dr. Schiff's usal and customary charge for the 95813 procedure billed to other auto insurers and paid by other auto insurers under their PIP coverage that do not use a percentile of a database to automatically reduce provider charges.

2.87 Auto insurers that do not use a percentile of a database to automatically reduce provider charges include the largest PIP insurers in Washington, including State Farm, PEMCO and Mutual of Enumclaw.

2.88 The full amount billed of $675 was reasonable because Dr. Schiff's rates were found to be reasonable in *Progressive* case.

2.89 Over 100 providers who were members of the certified class in the *Progressive* case have had their reasonable fees reduced by LM from February 9, 2013 to the present using LM's practices described in paragraph 2.09 to 2.71 above even though the same fees for the same CPT procedures were adjudicated to be reasonable in the *Progressive* case.

2.90 From at least February 9, 2013 to the present, LM has understood that the Washington PIP statute, RCW 48.22 et seq., required that automobile insurers offer PIP coverage that provided "medical and hospital benefits" with minimum limits of $10,000.

COMPLAINT - 12

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2.91    LM understood that the term "medical and hospital benefits" was defined to mean the payment of "*all* reasonable and necessary" medical expenses incurred by a covered person arising from a covered accident. Emphasis added.

2.92    LM also understood that the Washington PIP statute required that all reasonable medical expenses bills submitted by a provider under its PIP coverage be paid in full if the treatment was necessary and otherwise covered by its insurance policy provisions.

2.93    Dr. Schiff's bills that LM reduced based on the practices described in paragraphs 2.09 to 2.71 above were for treatment LM determined was "necessary" and covered by its PIP insurance policy.

2.94    LM's practices described in paragraphs 2.09 to 2.71 above did not result in the payment of "all" reasonable medical expense bills submitted by Washington providers on PIP claims from February 9, 2013 to November 18, 2016.

2.95    LM's practices described in paragraphs 2.09 to 2.71 above did not result in the payment of "all" reasonable medical expense bills submitted by Washington providers on PIP claims from February 9, 2013 to November 18, 2016.

2.96    LM's practices described in paragraphs 2.09 to 2.71 above could not possibly result in the payment of "all" reasonable medical expense bills submitted by Washington providers on PIP claims from February 7, 2013 to November 18, 2016.

2.97    LM's practices described in paragraphs 2.09 to 2.71 above did not result in the payment of "all" reasonable medical expense bills submitted by Dr. Schiff from February 9, 2013 to November 18, 2016.

2.98    From at least February 9, 2013 to November 18, 2016, LM has understood that WAC §284.30.330 required insurers to implement and adopt reasonable practices and procedures for investigating PIP insurance claims.

2.99    From at least February 9, 2013 to November 18, 2016, LM has understood that WAC §284.30.330 also required insurers to reasonably investigate a PIP insurance claim before refusing to pay the claim in full.

2.100    LM's practices described in paragraphs 2.09 to 2.71 above did not involve any investigation of the reasonableness of a provider's bill submitted on a PIP claim.

2.101    Prior to June 1, 2011, when LM's practices described in paragraphs 2.09 to 2.71 relied solely and exclusively on the 80th percentile of the Ingenix RV database to reduce provider bills using Mitchell's software product, there was no statistical, economic or reasonable basis for concluding that a charge for a CPT procedure that exceeds the 80th percentile of the Ingenix database was an unreasonable or excessive charge for the billing provider to charge for the CPT procedure in that provider's city or medical market.

2.102    From at least February 9, 2013 to November 18, 2016, when LM's practices described in paragraphs 2.09 to 2.71 relied solely and exclusively on the 80th percentile of the FH RV database to reduce provider bills using Mitchell's software product, there was no statistical, economic or reasonable basis for concluding that a charge for a CPT procedure that exceeds the 80th percentile of the Ingenix database was an unreasonable or excessive charge for the billing provider to charge for the CPT procedure in that provider's city or medical market.

2.103    From at least February 9, 2013 to November 18, 2016, LM has used it practices described in paragraphs 2.09 to 2.71 to avoid its duty to pay all reasonable bills submitted, as required by the PIP statute and to avoid its duties under WAC 284.30.330.

2.104    From at least February 9, 2013 to November 18, 2016, LM's practices described in paragraphs 2.09 to 2.71 have been deceptive with regard to LM's duties to pay all reasonable medical expense bills submitted on PIP claims and duties under WAC 284.30.330.

2.105    LM's practice of reducing bills based solely and exclusively on the 80th percentile of the FH RV Database is deceptive because LM has a duty to pay *all* reasonable bills, amounts above the 80th percentile can be reasonable and Dr. Schiff's bills in particular were reasonable.

2.106   LM's practices are deceptive because the statement in its EOR that its "payment (was) based on the usual and customary amount for the geographical area" is false.

2.107   LM's practice of relying solely and exclusively on the 80th percentile of the FH RV database does not and cannot produce a "usual and customary amount" for any CPT procedure for providers in the city, medical market or area in which the services were provided.

2.108   The 80th percentile of the FH RV database does not and cannot determine what percentage of providers in any area charge the amount billed by the provider for the CPT procedure and hence whether the amount billed is a "usual and customary amount."

2.109   The 80th percentile of the FH RV database does not and cannot determine whether the majority or over 50% of providers in the same area charge the amount billed by the provider for the CPT procedure and hence whether the amount billed is a "usual and customary amount."

2.110   The 80th percentile of the FH RV database does not and cannot determine what percentage of *similar* providers in any area charge the amount billed by the provider for the CPT procedure and hence whether it is a "usual and customary amount"  for *similar* provides to charge in the area with similar years of experience, credentials, specialization or overhead costs.

### III.   LEGAL CLAIMS AND CAUSES OF ACTION

### A.   DECLARATORY JUDGMENT ACT CLAIM

3.1   Plaintiff re-alleges each and every allegation as set forth in paragraphs 1.1 to 2. 110 above as through set forth here.

3.2   The Court should declare under the Uniform Declaratory Judgement Act, RCW 7.24 *et seq.* that:

a.   LM's practices described in paragraphs 2.09 to 2.110 above that were applied to Dr. Schiff's bills from February 9, 2013 to November 18, 2016 violated LM's duty under the PIP statute to pay "all reasonable" medical expenses submitted on PIP claims and violated LM's duty to pay Dr. Schiff's reasonable bills that were reduced using its practices.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

b.  LM's practices described in paragraphs 2.09 to 2.110 that were applied to Dr. Schiff's bills from February 9, 2013 to November 18, 2016 violated LM's duties under WAC 284-30-330 and those duties with regard to reductions made to Dr. Schiff's bills.

c.  LM's practices described in paragraphs 2.09 to 2.110 that were applied to Dr. Schiff's bills from February 9, 2013 to November 18, 2016 were unfair practices that violated the Washington Consumer Protection Act, RCW 19.*86 et seq.*

d.  LM's practices described in paragraphs 2.09 to 2.110 that were applied to Dr. Schiff's bills from February 9, 2013 to November 18, 2016 were deceptive practices that violated the Washington Consumer Protection Act, RCW 19.*86 et seq* because the practices had the capacity to deceive consumers, insureds and providers about LM's duties under the PIP statute and WAC.

3.3  LM's practices described in paragraphs 2.09 to 2.110 that were applied to Dr. Schiff's bills from February 9, 2013 to November 18, 2016 caused Dr. Schiff injury to his business and property in the form of loss revenue on the bills reduced and in administrative and other costs and fees associated with addressing LM's reductions.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Schiff respectfully prays that this Court enter judgment in his favor and against all Defendants jointly and severally on his Declaratory Judgment Act Claim, awarding the judgment requested in paragraphs 3.2-3.3 above.

Dated: February 9, 2017.

BRESKIN JOHNSON & TOWNSEND, PLLC

By:  s/ *David E. Breskin*
David E. Breskin, WSBA # 10607
1000 Second Avenue, Suite 3670
Seattle, WA 98104
(206) 652-8660 Fax (206) 652-8290
dbreskin@bjtlegal.com

COMPLAINT - 16

# EXHIBIT A

```
BILL INQUIRIES ONLY:
2501 WILMINGTON RD
NEW CASTLE, PA 16105
800-245-1700
```

**Liberty Mutual. INSURANCE**

| B. CODE | CHECK REFERENCE | CHECK DATE |
|---|---|---|
| 404 | 40033488 | 11/18/16 |
|  | CHECK AMOUNT | BLOCK NUMBER |
|  | *****$841.73 | 007284 |

PAGE 1 OF 1

```
SEND BILLS TO:
PO BOX 52043
PHOENIX, AZ 85072-2043
800-577-4299
```

OSN: VV0101111801-007322

CLAIM NO:   033531890-0001
POLICY NO:

INVOICE NO: 850215261
PROVIDER #: C552785

PAYEE:      DR STAN R SCHIFF MD
TAX ID:     XXXXX4331
BILL PROV:  DR STAN R SCHIFF MD
            1207 N 200TH ST STE 104A
            SHORELINE, WA 98133

PATIENT ACCT. #:
SSN:
DOI:               03/29/16
PATIENT:

PROVIDER:   DR STAN R SCHIFF MD

INSURED:
DATES OF SERVICE:  10/24/16-10/24/16

| DATE OF SERVICE | PROCEDURE CODE | MOD CDE | SERVICE DESCRIPTION | UNITS | CHARGES | REVIEW ALLOW | PPO ALLOW | PREV PAID | CURR PAID | EXPL CODES |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/24/16 | 95816 |  | EEG AWAKE AND DROWSY | 001 | 675.00 | 571.73 |  |  | 571.73 | 99 |
| 10/24/16 | 99215 |  | OFFICE/OUTPATIENT VISIT | 001 | 270.00 | 270.00 |  |  | 270.00 |  |

```
                TOTAL CHARGES:              945.00
                TOTAL PREVIOUSLY PAID:        0.00
                TOTAL CURRENT PAYABLE:      841.73
                TOTAL DEDUCTIBLE:             0.00
                TOTAL FEDERAL WITHHOLDING:    0.00

                TOTAL AMOUNT PAID:          841.73
```

EXPLANATION CODE DESCRIPTIONS:
99     OTHER

NOTES
BILL IMAGE CONTROL NUMBER-RM3061600040 PER RN, CPC REVIEW/KRM THIS PAYMENT IS ISSUED AGAINST A POLICY OF LIBERTY MUTUAL FIRE INSURANCE CO.CR 11/01/16.PAYMENT BASED ON THE USUAL AND CUSTOMARY AMOUNT FOR GEOGRAPHICAL AREA.

PLEASE REFERENCE CLAIM NO AND SEND THIS EOP WITH ALL CORRESPONDENCE

CAREFULLY DETACH CHECK BEFORE DEPOSITING - RETAIN STATEMENT FOR YOUR RECORDS